# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**D.B.,**

       **Plaintiff,**

**v.**                                                                 **Case No:   6:13-cv-434-Orl-31DAB**

**ORANGE COUNTY, FLORIDA,**

       **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the *Daubert*[1] motion (Doc. 71) filed by the Defendant, Orange County, Florida (the "County"), and the response in opposition (Doc. 82) filed by the Plaintiff, D.B.[2]

### I. Background

D.B., a transgender, male to female, was sexually assaulted by a fellow inmate while incarcerated at the Orange County Jail. (Doc. 2 at 1-2). In the instant suit, she asserts a negligence claim and a claim under 42 U.S.C. §1983 against the County, arguing that the County was deliberately indifferent to the risk of assault faced by herself and other transgender inmates. (Doc. 2 at 15-17).

The County seeks to exclude the opinions of Valerie Jenness, who is presented as an expert on the topics of prison violence, including sexual assault, and the structure and operation of prison

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

[2] As the victim of a sexual assault, the Plaintiff will be referred to in this opinion only by initials.

grievance systems. (Doc. 82-2 at 1). Jenness is the dean of the School of Social Ecology at the University of California, Irvine, as well as a professor of criminology, law and society and a professor of sociology at that institution. (Doc. 82-2 at 1). In her expert report, Jenness describes, *inter alia*, three major research projects related to corrections policy with which she was involved, including a multi-year study of sexual and non-sexual violence in California prisons for which she was lead researcher and a second study that focused solely on prison violence targeting male-to-female transgender inmates in California prisons. (Doc. 82-2 at 1-2).

## II.   Standards

When a party offers expert testimony and the opposing party raises a *Daubert* challenge, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). This requirement for proof of the reliability of the expert's method comes from Fed.R.Evid. 702, which authorizes the admission of expert opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 lays the foundation for the trial court's *Daubert* analysis. *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786.

*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury. *Id.* at 589 n.7, 597, 113 S.Ct. 2786. As a gatekeeper the court must do "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593–94, 113 S.Ct. 2786. The proposed testimony must

derive from the scientific method; good grounds and appropriate validation must support it.  *Id.* at 590, 113 S.Ct. 2786.  "In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability."  *Id.*   The court must consider the testimony with the understanding that "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion."  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004).

### III.    Analysis

The County contends that Jenness is not qualified to opine on the policies and procedures utilized in Orange County correctional facilities because she has never worked in a prison and because her years of research and education are "specific to California prisons" rather than Florida (or Orange County, Florida) facilities.  (Doc. 71 at 6).  As noted above, Jenness has spent years conducting and coordinating research into prison conditions by way of, among other things, interviews with inmates.   The County offers no basis for this Court to conclude that actual employment in a prison is a prerequisite to obtaining expertise regarding prison conditions and policies, or that California jails are so different from Florida jails that expertise regarding the former is of no relevance regarding the latter.

The County also argues that Jenness's testimony is inadmissible because it invades the province of the jury by opining as to what the County knew about the risks faced by D.B.   For example, in her expert disclosure, Jenness states that after reviewing various reports and deposition transcripts in this case, that it "seems to me that there is prima facie evidence to suggest [that] D.B. clearly expressed a fear for her safety to numerous correctional officials while incarcerated in the Orange County Correctional Center, including C.O. Davis."   (Doc. 82-2 at 8).  The problem here appears to be one of semantics.   An expert is entitled to make reasonable

assumptions and inform the factfinder of those assumptions to put his or her opinions in context. *See*, *e.g.*, *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001). Thus, Jenness might be permitted to testify that her opinions are based in part on an assumed fact – *i.e.*, that D.B. notified guards that she feared for her safety – along with the basis for that assumption. However, she could not simply testify that, in her opinion, it was a fact that D.B. notified guards that she feared for her safety. Although this distinction is not always made clear in Jenness's expert disclosure, this is not a basis for striking the entirety of her opinions.

Finally, the County argues that Jenness should not be able to opine as to whether the County's conduct constituted "deliberate indifference" as to the risk that D.B. would be assaulted, on the grounds that this is a matter that the jury does not need expert assistance to determine. To be admissible under Rule 704, an expert's opinion on an ultimate issue must be helpful to the jury and also must be based on adequately explored legal criteria. *Hanson v. Waller*, 888 F.2d 806 (11th Cir. 1989) (citing *Haney v. Mizell Memorial Hospital*, 744 F.2d 1467, 1474 (11th Cir. 1984)). At this stage of the proceedings, the Court cannot conclude that Jenness's testimony regarding such topics as other precautions that might have been employed to prevent sexual assaults would not be helpful to the jury in determining whether the County acted with deliberate indifference in failing to do so.

In consideration of the foregoing, it is hereby

**ORDERED** that the *Daubert* motion (Doc. 71) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 17, 2014.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party